IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DAVIDTRON LOGAN                                                                  PLAINTIFF

V.                                           CIVIL ACTION NO. 3:20-cv-050-NBB-RP

YALOBUSHA COUNTY, MISSISSIPPI, ET AL.                DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendant Tommy West's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual Background and Procedural Posture

This case arises from an incident that occurred during a safety checkpoint set up by the Mississippi Bureau of Narcotics ("MBN") in Yalobusha County, Mississippi, on July 18, 2019. The plaintiff, Davidtron Logan, arrived at the checkpoint around 11:45 p.m., and defendant Yalobusha County Sheriff's Deputy Tommy West happened to be behind him in a separate vehicle. As he approached the checkpoint, Logan opened his vehicle door and threw out a napkin which Logan later asserted contained a small amount of marijuana. Logan then continued toward the checkpoint.

At the checkpoint, Deputy Taylor Byford asked Logan for his driver's license, which Logan did not have. It was later discovered that Logan was driving with a suspended license. Meanwhile, Deputy West, who had witnessed Logan throw out the napkin from his vehicle, stopped to pick up the napkin. West discovered what he believed to be several doses of the narcotic known as ecstasy (or MDMA). West called Byford and asked him to retain Logan.

Byford then asked Logan to step out of his car. Logan complied, and Byford instructed Logan to turn around and place his hands on the vehicle so Byford could initiate a routine pat down.

According to the defendants, when Byford attempted to check Logan for weapons, Logan violently pushed past Byford and attempted to run away. Byford testified that in doing so, Logan physically ran into Byford. During Logan's initial attempt to flee, Byford held onto Logan's arm while Logan lowered his shoulder and ran toward Deputy West and Water Valley Police Officer Brian Wilhite, who was also on the scene. West was able to grab onto Logan's arm and was carried several feet past his patrol car before other officers were able to assist West in bringing Logan to the ground. Logan and three officers fell to the pavement, while Logan kicked and attempted to fight to get away from the officers. Logan continued to kick at the officers and again attempted to flee, despite multiple orders from the officers to stop fighting and place his hands behind his back. As Logan continued to fight the officers, Byford deployed his taser from approximately five feet away, but the taser had no effect on Logan.

MBN Agent John Butts and Keith Davis were also on the scene and joined in the effort to arrest Logan. Logan continued to resist by placing his arms beneath his body and lying on the pavement. West then deployed empty hand strikes to Logan's legs and the side of his face. After several more attempts, the officers ultimately succeeded in handcuffing Logan behind his back. During this encounter, Logan was laughing and appeared to be under the influence of an unknown drug or drugs.

Logan reports a slightly different version of the events surrounding his initial attempt to flee stating that he fell to the ground and was therefore unable to kick anyone and that he did not try to run into the officers. He denies kicking the officers while he was on the ground. This dispute is irrelevant, however, as Logan does not assert he was injured at this point. Logan

instead alleges his injuries occurred during his second attempt to flee when both he and Byford were taken to the ground. Logan asserts he was tripped but does not know who tripped him. Logan's face hit the pavement during this fall, and Deputy Byford's chest hit the pavement.

According to Logan, when he fell, he fell onto his side and hit his shoulder. Then an unknown officer came and stood over him and allegedly started hitting him in the face. This is the point at which Logan asserts excessive force was used against him. Next an unknown officer took Logan's legs, and together some of the officers picked him up and escorted him to a police vehicle. Logan was transported in a city car. Logan specifically testified that he did not know Deputy West or any action that West took against him that night. Though he denies kicking anyone during the first incident, he is silent as to whether he was kicking at the officers, including Deputy Byford, during the second incident. As noted, it is the second incident from which Logan's excessive force claim allegedly arose.

It is uncontested that Logan appeared to be injured and had blood on his face which appeared to be coming from above his left eye. The officers were also concerned about Logan's unnatural demeanor. Paramedics were dispatched to the jail, and it undisputed that Logan received medical treatment once he was transported to the jail. Deputy Jason Mangrum later transported Logan by patrol car to Baptist Memorial Hospital in Oxford, Mississippi, so that he could receive further treatment in the hospital's emergency room. Medical personnel at the hospital determined that Logan had an orbital fracture, and he was given stitches above and below his left eye and in his upper lip. Mangrum subsequently released Logan from custody so he could seek further medical treatment if he so desired.

It was later determined that the napkin discarded by Logan at the checkpoint contained 24 tablets of MDMA and two more were discovered on the ground where Logan was taken into

custody. Marijuana was also discovered in Logan's pants pocket. Logan was charged with driving with a suspended license, resisting arrest, possession of paraphernalia, possession of MDMA with intent to distribute, and two counts of assault of a law enforcement officer. In August 2020, Logan pled guilty to the charges of possession of methamphetamine and one count of simple assault. At the plea hearing, the state's factual basis to which Logan pled, included that Logan did "willingly and unlawfully attempt to cause or purposefully or knowingly or recklessly cause bodily injury to Taylor Byford by kicking Taylor Byford."

In filing the present action, Logan asserted claims under the Eighth and Fourteenth Amendments, bystander liability, and a number of state law claims. The plaintiff has now conceded that all of these claims must fail based on lack of evidentiary support, leaving only Logan's Fourth Amendment claim of excessive force.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*,

4

369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

After examining the record and facts in the light most favorable to the plaintiff, the court finds that Logan's only remaining claim, his Fourth Amendment excessive force claim, is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). According to *Heck*, a convicted criminal may not bring a claim under 42 U.S.C. § 1983 if success on that claim would necessarily imply the invalidity of a prior criminal conviction. *Id.* at 487. "In other words, a 'plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted.'" *Green v. City of Moss Point, Miss.*, 495 F. App'x 495, 498 (5th Cir. 2012).

Based on Logan's plea and conviction for assault against Deputy Byford, Deputy West had the right to use hand strikes against Logan to prevent him from willfully, unlawfully, and knowingly causing injury to Deputy Byford. Use of force is not unreasonable when the officer has reason to believe that the suspect poses a serious threat to others. *Green*, 495 F. App'x at 499. Logan concedes that, as to Deputy West, he has no excessive force claim during Logan's first attempt to run from law enforcement and the ensuing struggle. Logan also asserts that he did not kick any officer during the first struggle. He did, however, plead guilty to assault against Deputy Byford. Thus, by Logan's own assertions and testimony, his assault on Byford had to have occurred during the second struggle, which is when West used hand strikes against Logan

5

to subdue him and prevent injury to others. West's use of force in the form of hand strikes under these circumstances cannot be found to be objectively unreasonable. An excessive force claim based on the facts in the record before the court would call into question the validity of Logan's conviction for assault against Byford and accordingly is *Heck*-barred.

Further, even if not barred by *Heck v. Humphrey*, Logan's excessive force claim would fail because Logan cannot show that his injuries resulted "directly and only" from Deputy West's actions. To prevail on an excessive force claim, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

Logan incurred injuries to his face when, by his own admission, he attempted to flee from the officers, tripped, and fell face-first onto the asphalt. It therefore cannot be said that his injuries resulted "directly and only" from Deputy West's actions. Further, Logan testified that he did not know Deputy West and was unaware of any action Deputy West took against him. Logan's excessive force claim against West fails for these reasons as well as for the fact that West's use of minimal force was objectively reasonable under the circumstances presented here. It is axiomatic that the "right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,'" although the use of force must be reasonable. *Bush*, 513 F.3d at 502 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The elements of reasonableness are (1) the severity of the crime at issue, (2) whether the suspect posed a threat to an officer's safety, and (3) whether the suspect was resisting arrest or attempting to flee. *Id.*

Here, the elements of reasonableness are easily met. First, Logan was suspected and later convicted of a drug crime, which the Fifth Circuit considers a serious crime. *See, e.g.*, *Darden v.*

*City of Ft. Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018). Second, Logan was reasonably perceived as a threat to an officer on the scene because of his continued attempts to resist arrest with kicking and other violent behavior. Logan also attempted to reach into his pockets during the struggles surrounding his arrest admittedly to retrieve drugs he wanted to discard. The officers reasonably interpreted this action as a potential threat in that Logan appeared to be reaching for a weapon. Finally, Logan admittedly attempted to flee during the incident and clearly resisted arrest. Thus, even if Logan's claim could survive the *Heck* bar, Deputy West would nevertheless be entitled to qualified immunity and summary judgment on Logan's only remaining claim.

## Conclusion

For the foregoing reasons, the court finds that Defendant Tommy West's motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion will issue this day.

This 21st day of September, 2022.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE